JENNIFER L. KEEL, California Bar No. 241865
jkeel@burgsimpson.com.com
BURG SIMPSON ELDREDGE HERSH &
JARDINE, PC
40 Inverness Drive East
Englewood, CO 80112
Telephone: (303) 792-5595
Facsimile: (303) 708-0527

Attorney for Plaintiff Todd Smith

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Todd Smith,<br><br>Plaintiff,<br><br>v.<br><br>Eli Lilly and Company, and<br>Lilly USA, LLC,<br><br>Defendants. | Case No.:<br>Judge:<br><br>**COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

Plaintiff, Todd Smith, by and through his undersigned counsel Burg Simpson Eldredge Hersh & Jardine, P.C., hereby alleges as follows:

**INTRODUCTION**

1.      This case involves the prescription drug Axiron, which is manufactured, sold, distributed and promoted by Defendants as a testosterone replacement therapy.

2.      Defendants misrepresented that Axiron is a safe and effective treatment for hypogonadism or "low testosterone," when in fact the drug causes serious medical problems, including life threatening cardiac events, strokes, and thromboembolic events.

3.     Defendants engaged in aggressive, direct-to-consumer and physician marketing and advertising campaigns for Axiron.  Further, Defendants engaged in an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from low testosterone or "Low T," which was ultimately designed to sell Axiron.

4.     As a result, diagnoses of low testosterone or "Low T" have increased exponentially.  This has directly related Axiron's sales increasing to over $178.7 million per year.

5.     However, consumers of Axiron and other testosterone therapy medications were misled as to the drug's safety and efficacy, and as a result have suffered injuries including life-threatening cardiac events, strokes, and thromboembolic events.

## PARTIES
### Plaintiff Todd Smith

6.     Plaintiff Todd Smith is a citizen of the United States of America, and is currently a resident of Solano County, California.

7.     Plaintiff Todd Smith began using the prescription drug Axiron as prescribed and directed by his physician in the summer of 2011 and continued to use Axiron until July 31, 2012.

8.     On or about July 31, 2012, while using Axiron, Plaintiff Todd Smith was diagnosed with a portal vein thrombosis, and other blood clots in his veins and intestines.

9.     Plaintiff Todd Smith was hospitalized and underwent extensive treatment for his portal vein thrombosis and other related injuries in a hospital located in San Francisco County, California for approximately 12 days.

10.     At the time of Plaintiff Todd Smith's injuries at issue in this action, he was a resident of the State of California.

**Defendants Eli Lilly and Company and Lilly USA, LLC**

11.     Defendant Eli Lilly and Company is a corporation organized and existing under the laws of Indiana with its principal place of business at Lilly Corporate Center, Indianapolis, Indiana 46285.

12.     Defendant Lilly USA, LLC is a limited liability company operating as a wholly owned subsidiary of Defendant Eli Lilly and Company, with its principal place of business also located at Lilly Corporate Center, Indianapolis, Indiana 46285.

13.     Defendants are, and were at the time of Plaintiff's use of Axiron, the manufacturers, designers, distributors, and/or marketers of the prescription drug Axiron.

14.     An Australian company by the name of Acrux Limited originally developed Axiron. However, in March of 2010, Acrux and Eli Lilly and Company entered into an exclusive worldwide license agreement for the commercialization of Axiron. Shortly thereafter, on November 23, 2010, Axiron received FDA approval.

15.     At all times herein mentioned, Defendants advertised, promoted, supplied, and sold to distributors and retailers for resale to physicians, hospitals, medical practitioners, and the general public the pharmaceutical product Axiron in this judicial district, in the State of California, and in interstate commerce.

**JURISDICTION, VENUE, AND INTERDISTRICT ASSIGNMENT**

16.     This Court has jurisdiction over Defendants and this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants, and because the amount in controversy between Plaintiff and Defendants exceeds $75,000, exclusive of interest and cost, and because, among other reasons, Defendant has significant contacts with this district by virtue of the fact that it does business within this judicial district.

17.     Venue is proper within this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2), because Defendants are entities who are subject to the court's personal jurisdiction with respect to the civil action in question and therefore are deemed to reside in this judicial district for venue purposes.

18.     Venue also is proper within this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

19.     Intradistrict Assignment is proper in San Francisco, because a substantial part of the events or omissions which give rise to the claim occurred in this district.

## FACTUAL BACKGROUND
### General Allegations

20.     This action is for damages brought on behalf of Plaintiff who was prescribed and supplied with, received, and who has taken and applied the prescription drug Axiron, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold, or otherwise placed in the stream of interstate commerce by Defendants.  This action seeks, among other relief, general and special damages and equitable relief in order to enable Plaintiff to treat and monitor the dangerous, severe and life-threatening side effects caused by this drug.

21.     Defendants' wrongful acts, omissions, and fraudulent misrepresentations caused Plaintiff's injuries and damages.

22.     At all times herein mentioned, the Defendants were engaged in the business of, or were successors in interest to, entities engaged in the business of research, licensing, designing, formulating,  compounding,  testing,  manufacturing,  producing,  processing,  assembling,

- 4 -

inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug Axiron for the use and application by Plaintiff.

23.     At all times herein mentioned, Defendants were authorized to do business within the State of California, which is the State in which Plaintiff's injuries arose.

24.     At all times herein mentioned, the officers and directors of Defendants participated in, authorized, and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Plaintiff herein.

**OVERVIEW**

25.     Hypogonadism is a specific condition of the sex glands, which in men may involve the diminished production or nonproduction of testosterone.

26.     The Food and Drug Administration approved Axiron as an androgen indicated for replacement therapy in adult males for conditions associated with a deficiency or absence of endogenous testosterone, specifically "primary hypogonadism" and "hypogonadotrophic hypogonadism."

27.     However, a study published in the Journal of the American Medical Association ("JAMA") in August 2013 entitled "Trends in Androgen Prescribing in the United States, 2001-2011" indicated that many men who get testosterone prescriptions have no evidence of hypogonadism.  For example, one third of men prescribed testosterone had a diagnosis of fatigue, and one quarter of men did not even have their testosterone levels tested before they received a testosterone prescription.

28.      Defendants knew this and coordinated a massive advertising campaign designed to convince men that they suffered from low testosterone.  Defendants orchestrated national

disease awareness media blitzes that purported to educate male consumers about the signs of low testosterone. The marketing campaigns consisted of television advertisements, promotional literature placed in healthcare providers' offices and distributed to potential testosterone users, and online media.

29.     The television advertisements suggest that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of the "symptoms" of low testosterone. These "symptoms" include listlessness, increased body fat, and moodiness—all general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone.

30.     Since the FDA approved Axiron, Defendants have also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed, and that conditions associated with normal aging could be caused by low testosterone levels.

31.     While running this disease awareness campaign, Defendants promote Axiron as an easy-to-use topical testosterone replacement therapy. Defendants contrast their product's at-home topical application with less convenient prescription testosterone medications, such as injections, which require frequent doctor visits.

32.     Indeed, Defendants' November 23, 2010 press release touts Axiron as being "the first testosterone topical solution approved for application via an armpit (underarm) applicator."

33.     Defendants convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Defendants' promises of safety and ease. Although prescription testosterone replacement therapy had been available for years, millions of men who had never been prescribed testosterone flocked to their doctors and pharmacies.

COMPLAINT AND JURY DEMAND

34. What consumers received, however, were not safe drugs, but a product that causes life-threatening problems, including strokes, heart attacks, and thromboembolic events, such as deep vein thrombosis and pulmonary embolism.

35. Defendants successfully created a robust and previously nonexistent market for their drug.

36. Defendants' advertising paid off in a return of $178.7 million in Axiron sales during the past year, making Axiron one of the leading testosterone replacement therapy drugs on the market.

37. Sales of replacement testosterone therapies generally have more than doubled since 2006, and are expected to triple to $5 billion by 2017, according to forecasts by Global Industry Analysts. Shannon Pettypiece, *Are Testosterone Drugs the Next Viagra?*, May 10, 2012, Bloomberg Businessweek, *available at:* http://www.businessweek.com/articles/2012-05-10/are-testosterone-drugs-the-next-viagra.

38. Defendants have profited greatly from the increase in sales of Axiron.

39. Indeed, according to Defendants' 2013 Annual Report, Lilly listed Axiron as one of six "Key Contributors to 2013 Revenue Growth," having brought in $104.7 million during 2013 over 2012, an accomplishment that was "driven primarily by volume increases."

40. Defendants' marketing program sought to create the image and belief by consumers and physicians that low testosterone affected a large number of men in the United States and that Axiron is safe for human use, even though Defendants knew these claims to be false, and had no reasonable grounds to believe them to be true.

41. There have been a number of recent studies suggesting that testosterone in men increases the risk of heart attacks, strokes and other cardiovascular events.

42.     For example, in 2010, a New England Journal of Medicine Study entitled "Adverse Events Associated with Testosterone Administration" was discontinued after an exceedingly high number of men in the testosterone group suffered adverse events.

43.     In November of 2013, a JAMA study was released entitled "Association of Testosterone Therapy with Mortality, Myocardial Infarction, and Stroke in Men with Low Testosterone Levels" which indicated that testosterone therapy raised the risk of death, heart attack and stroke by about 30%.

44.     On January 29, 2014, a study was released in PLOS ONE entitled "Increased Risk of Non-Fatal Myocardial Infarction Following Testosterone Therapy Prescription in Men" which indicated that testosterone use doubled the risk of heart attacks in men over sixty five years old and men younger than sixty five with a previous diagnosis of heart disease.

45.     Additional studies and medical evidence further indicate that the use of testosterone in men increases hematocrit, hemoglobin, and estradiol, thereby increasing the risk of thromboembolic events, such as deep vein thrombosis and pulmonary embolism.

46.     Indeed, as recently as June 20, 2014, the Food and Drug Administration issued a safety communication to primary care doctors and pharmacies, advising that it is requiring the manufacturers of all testosterone products to include a warning in the drug labeling to warn physicians and consumers about the risk of venous thromboembolism ("VTE"), including deep vein thrombosis ("DVT") and pulmonary embolism ("PE").

**Factual Allegations Common to All Causes of Action**

47.     The Food and Drug Administration ("FDA") approved Axiron on November 23, 2010 as "an androgen indicated for replacement therapy in males for conditions associated with a deficiency or absence of endogenous testosterone," specifically "primary hypogonadism" and

"hypogonadotrophic hypogonadism." After FDA approval, Axiron was widely and aggressively advertised and marketed by Defendant as a safe and effective testosterone replacement therapy.

48. Primary hypogonadism is described in the Axiron label as "testicular failure due to conditions such as cryptorchidism, bilateral torsion, orchitis, vanishing testis syndrome, orchiectomy, Klinefelter's syndrome, chemotherapy, or toxic damage from alcohol or heavy metals."

49. Hypogonadotrophic hypogonadism is described in the Axiron label as "idiopathic gonadotropin or luteinizing hormone-releasing hormone (LHRH) deficiency or pituitary-hypothalamic injury from tumors, trauma, or radiation."

50. Axiron is a hydroalcoholic gel containing testosterone. It is applied to the axilla, or armpit, and enters the body through transdermal absorption.

51. Testosterone is a primary androgenic hormone responsible for normal growth, development of the male sex organs, and maintenance of secondary sex characteristics.

52. The hormone plays a role in sperm production, fat distribution, maintenance of muscle strength and mass, and sex drive.

53. In men, testosterone levels normally begin a gradual decline after the age of thirty.

54. The average testosterone levels for most men range from 300 to 1,000 nanograms per deciliter of blood. However, testosterone levels can fluctuate greatly depending on many factors, including sleep, time of day, and medication. As a result, many men who fall into the hypogonadal range one day will have normal testosterone levels the next.

55. Axiron may produce undesirable side effects to patients who use the drug, including but not limited to, myocardial infarction, stroke, thromboembolic events, and death.

56. In some patient populations, Axiron use may increase the incidence of myocardial infarctions and death by over 500%.

57.     In addition to the above, Axiron has been linked to several severe and life changing medical disorders in both users and those who come into physical contact with users or the unwashed clothes of someone who applied Axiron.  Patients taking Axiron may experience enlarged prostates and increased serum prostate-specific antigen levels.

58.     Secondary exposure to Axiron can cause side effects in others. In 2009, the FDA issued a black box warning for testosterone prescriptions, advising patients of reported virilization in children who were secondarily exposed to the gel. Testosterone may also cause physical changes in women exposed to the drug and cause fetal damage with pregnant women who come into secondary contact with testosterone.

59.     The label for Axiron contains this same black box warning.

60.     Defendants' marketing strategy has been to aggressively market and sell their products by misleading potential users about the prevalence and symptoms of low testosterone and by failing to protect users from serious dangers that Defendants knew or should have known to result from use of its products.

61.     Defendants successfully marketed Axiron by undertaking a "disease awareness" marketing campaign. This campaign sought to create a consumer perception that low testosterone is prevalent among U.S. men and that symptoms previously associated with other physical and mental conditions, such as aging, stress, depression, and lethargy were actually attributable to "Low-T."

62.     Defendants' advertising program sought to create the image and belief by consumers and the medical community that the use of Axiron was a safe method of alleviating their symptoms, had few side effects and would not interfere with their daily lives, even though Defendants knew or should have known these to be false, and even though the Defendants had no reasonable grounds to believe them to be true.

63.     Defendants' advertising program sought to create a belief by consumers and the medical community that Axiron was a safe and effective method of alleviating symptoms associated with "Low-T" in men who had not been diagnosed with either primary hypogonadism or hypogonadotrophic hypogonadism and constitutes off-label promotion in violation of federal law.

64.     Defendants purposefully downplayed, understated and outright ignored the health hazards and risks associated with using Axiron. Defendants deceived potential Axiron users by relaying positive information through the press, including testimonials from retired professional athletes, and manipulating hypogonadism statistics to suggest widespread disease prevalence, while downplaying known adverse and serious health effects.

65.     Defendants concealed material relevant information from potential Axiron users and minimized user and prescriber concern regarding the safety of Axiron.

66.     In particular, in the warnings Defendants provide in their television commercials, online marketing and print advertisements, Defendants do not mention any potential cardiac or stroke side effects, and downplay the significance and severity of thromboembolic side effects, such as DVT and PE.  Defendants falsely represent that they adequately tested Axiron for all likely side effects.

67.     As a result of Defendants' advertising and marketing, and representations about its product, men in the United States pervasively seek out prescriptions for Axiron.  If Plaintiff in this action had known the risks and dangers associated with Axiron, Plaintiff would not have taken Axiron and consequently would not have been subject to its serious side effects.

## SPECIFIC FACTUAL ALLEGATIONS

68.     Plaintiff Todd Smith began using the prescription drug Axiron as prescribed and directed by his physician in approximately July 2011 and continued to use Axiron until approximately July 2012.  In July 2012, while using Axiron, Plaintiff Todd Smith was diagnosed with and suffered a portal vein thrombosis and other life threatening blood clots in his venous system and intestines.

69.     Plaintiff was only 43 years of age when he was prescribed and used testosterone for symptoms he attributed to low testosterone.  He was only 44 at the time of his injuries.

70.     Plaintiff had no prior history of stroke, cardiovascular disease, or thromboembolic events prior to taking testosterone.  In keeping with his proactive lifestyle, Plaintiff agreed to initiate testosterone treatment.

71.     As a direct and proximate result of using Axiron, Plaintiff Todd Smith suffered the injuries described above.

72.     Prior to and at the time of Plaintiff's use of Axiron, Defendants knew or should have known that the use of Axiron created a significantly increased risk of serious personal injury, including stroke, heart attack, blood clots, and even death, and that such use was unreasonably dangerous to consumers such as Plaintiff.

73.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Axiron, Defendants failed to adequately warn Plaintiff Todd Smith and/or his health care providers of these risks before he used the product.

74.     Had Defendants properly disclosed the risks associated with Axiron and other testosterone products, Plaintiff Todd Smith would have avoided the risk of venous thromboembolism in the form of a portal vein thrombosis by either not using Axiron and/or

testosterone at all, severely limiting the dosage and length of use, and/or by closely monitoring the degree to which the drugs were adversely affecting his health.

75.     As a direct and proximate result of Plaintiff's use of Axiron, Defendants' negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the drug testosterone, Plaintiff Todd Smith suffered severe and permanent physical and emotional injuries, including, but not limited to a serious portal vein thrombosis, and other blood clots in the venous and intestinal system, which may have caused permanent effects, and may continue in the future to cause him physical effects and damages which will affect him throughout his lifetime.

76.     Further, as a direct and proximate result of Plaintiff's use of Axiron, Defendants' negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the drug testosterone, Plaintiff has suffered significant mental anguish and emotional distress and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

77.     Plaintiff Todd Smith has also suffered economic loss, including incurring significant expenses for medical care and treatment, and will continue to incur such expenses in the future, as a direct and proximate result of his use of Axiron and Defendants' conduct as described herein.

### FIRST CAUSE OF ACTION

**Strict Products Liability**
**Defective Manufacturing**

78.     Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein and further alleges as follows.

- 13 -

79.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of the prescription drug Axiron.

80.     The Axiron manufactured, designed, sold, distributed, supplied, and/or placed in the stream of commerce by Defendants was defective in its manufacture and construction, such that it was unreasonably dangerous, was not fit for the ordinary purpose for which it was intended, and/or did not meet the reasonable expectations of an ordinary consumer.

81.     The Axiron manufactured, designed, sold, distributed, supplied, and/or placed in the stream of commerce by Defendants was defective in its manufacture and construction as described herein at the time it left the Defendants' control.

82.     As a direct and proximate result of Plaintiff's use of Axiron as manufactured, designed, sold, supplied, and introduced into the stream of commerce by Defendants, Plaintiff Todd Smith suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

83.     Defendants' conduct as alleged in this Complaint shows that Defendants acted with malice, oppression, fraud, and a conscious disregard of the rights and safety of others, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### Strict Product Liability
### Design Defect

84.     Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein and further alleges as follows.

85.     Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Axiron.

- 14 -

86.     The Axiron manufactured, designed, sold, distributed, supplied, and/or placed in the stream of commerce by Defendants was defective in its design such that it was unreasonably dangerous, was not fit for the ordinary purpose for which it was intended, and/or did not meet the reasonable expectations of an ordinary consumer.

87.     Specifically the Axiron manufactured, designed, sold, distributed, supplied, and/or placed in the stream of commerce by Defendants was defective in its design because the product failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner and/or the risk of danger inherent in the design outweighed any alleged benefits associated with the product.

88.     At the time Defendants manufactured, designed, distributed, sold, and/or supplied Axiron into the stream of commerce, safer, more practical, alternative methods for treating alleged symptoms of "low testosterone" were available.

89.     The Axiron manufactured, designed, sold, distributed, supplied, and/or placed in the stream of commerce by Defendants was defective in design as described herein at the time it left Defendants' control.

90.     As a direct and proximate result of Plaintiff's use of Axiron as manufactured, designed, sold, supplied, and/or introduced into the stream of commerce by Defendants, and as a direct and proximate result of the defective nature of Defendants' Axiron, Plaintiff Todd Smith suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

91.     Defendants' conduct as alleged in this Complaint shows that Defendants acted with malice, oppression, fraud, and a conscious disregard of the rights and safety of others, so as to warrant the imposition of punitive damages.

- 15 -

## THIRD CAUSE OF ACTION

### Strict Product Liability
### Defect Due to Inadequate Warnings or Instructions

92.     Plaintiff incorporates by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein and further alleges as follows.

93.     The Axiron manufactured and/or supplied by Defendants was defective due to inadequate warnings or instructions, because Defendants knew or should have known that the product was unreasonably dangerous to consumers in that it created a significant risk of serious bodily harm and death to reasonably foreseeable consumers, such as Plaintiff, and Defendants failed to adequately warn or instruct consumers and/or their health care providers of such risks.

94.     The Axiron manufactured and/or supplied by Defendants was also defective due to inadequate post-marketing warnings or instructions, because, after Defendants knew or should have known of the significant risk of serious bodily harm and death from the use of Axiron, Defendants failed to provide adequate warnings to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

95.     As a direct and proximate result of Plaintiff's reasonably anticipated use of Axiron as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendants, Plaintiff Todd Smith suffered serious personal injury, economic and non-economic damages, and will continue to suffer such harm, damages and losses in the future.

96.     Defendants' conduct as alleged in this Complaint shows that Defendants acted with malice, oppression, fraud, and a conscious disregard of the rights and safety of others, so as to warrant the imposition of punitive damages.

## FOURTH CAUSE OF ACTION

### Negligence

97.     Plaintiff incorporates by reference herein each of the allegations set forth in this Complaint as though set forth herein and further alleges as follows:

98.     Defendants had a duty to exercise reasonable care in the manufacture, design, sale, distribution, supply, marketing, and/or placement of Axiron into the stream of commerce, including a duty to ensure that their product did not pose a significant increased risk of bodily harm and adverse events, such as stroke, heart attack, thromboembolism, and death, and a duty to adequately warn of the risks and dangers of Axiron.

99.     Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotion, and distribution of Axiron into interstate commerce in that Defendants knew, or should have known, that the product caused such significant bodily harm or death and was not safe for use by consumers.

100.     Defendants also failed to exercise reasonable care in the labeling of Axiron and failed to provide to consumers and/or their health care providers adequate warnings of the increased risk of bodily injury or death due to the use of Axiron.

101.     Despite the fact that Defendants knew or should have known that Axiron caused unreasonable, dangerous side effects, as described herein, Defendants continued to manufacture and market Axiron for use by consumers including Plaintiff, even though there were safer alternative methods of treating loss of energy, loss of libido, erectile dysfunction, depression, loss of muscle mass, and other symptoms and conditions, which Defendants claim to be caused by low testosterone.

102.    Defendants knew or should have known that consumers, such as Plaintiff Todd Smith, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

103.    As a direct and proximate result of Defendants' negligence, Plaintiff Todd Smith suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

104.    Defendants' conduct as alleged in this Complaint shows that Defendants acted with malice, oppression, fraud, and a conscious disregard of the rights and safety of others, so as to warrant the imposition of punitive damages.

### FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

105.    Plaintiff incorporates by reference here each of the allegations heretofore set forth in this Complaint as though fully set forth herein and further alleges as follows.

106.    At the time Defendants manufactured, marketed, sold, and distributed Axiron, Defendants knew of the use of which Axiron was intended and impliedly warranted to Plaintiff and to his physicians that Axiron was of merchantable quality and safe for use as directed.

107.    Plaintiff was and is unskilled in the research, design, and manufacture of Axiron and reasonably relied on the skill, judgment and implied warranty of Defendants in deciding to use Axiron.

108.    Contrary to their implied warranty, Defendants' product Axiron was not of merchantable quality or safe, because it was unreasonably dangerous as described herein.

- 18 -

109.     As a direct and proximate result of Defendants' breach of warranty, Plaintiff Todd Smith suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

110.     Defendants' conduct as alleged in this Complaint shows that Defendants acted with malice, oppression, fraud, and a conscious disregard of the rights and safety of others, so as to warrant the imposition of punitive damages.


**SIXTH CAUSE OF ACTION**

**Breach of Implied Warranty of Fitness for a Particular Purpose**

111.     Plaintiff incorporates by reference here each of the allegations heretofore set forth in this Complaint as though fully set forth herein and further alleges as follows.

112.     At the time Defendants manufactured, marketed, sold, and distributed Axiron, Defendants knew of the use of which Axiron was intended and impliedly warranted to Plaintiff and to his physicians that Axiron was fit for the particular purpose of treating men experiencing symptoms such as low energy, fatigue, and/or low libido, which Defendants identified as a condition known as low testosterone; rather than making it clear that Axiron was only approved for treatment of men diagnosed with hypogonadism.

113.     Plaintiff was and is unskilled in the research, design, and manufacture of Axiron and reasonably relied on the skill, judgment and implied warranty of Defendants in deciding to use Axiron.

114.     Contrary to their implied warranty, Defendants' product Axiron was not fit for the particular purpose of treating men experiencing symptoms such as low energy, fatigue, and/or low libido, because it was unreasonably dangerous as described herein.

115.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff Todd Smith suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

116.    Defendants' conduct as alleged in this Complaint shows that Defendants acted with malice, oppression, fraud, and a conscious disregard of the rights and safety of others, so as to warrant the imposition of punitive damages.

## SEVENTH CAUSE OF ACTION

### Breach of Express Warranty

117.    Plaintiff incorporates by reference here each of the allegations set forth in this Complaint as though fully set forth here and further alleges as follows.

118.    Defendants expressly warranted to Plaintiff and Plaintiff's physicians, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Axiron was safe, effective, fit and proper for its intended use.

119.    Plaintiff purchased and used Axiron, and Plaintiff's physician prescribed Axiron, relying on the skill, judgment, representations, and express warranties of Defendants.

120.    Contrary to Defendants' express warranties, Defendants' Axiron did not conform to these express representations and warranties, because Axiron caused serious injury to consumers such as Plaintiff who used the product when taken in the recommended dosages.

121.    As a direct and proximate result of Defendants' breach of express warranty, Plaintiff Todd Smith suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

122.    Defendants' conduct as alleged in this Complaint shows that Defendants acted with malice, oppression, fraud, and a conscious disregard of the rights and safety of others, so as to warrant the imposition of punitive damages.

## EIGHTH CAUSE OF ACTION

### Fraud

123.    Plaintiff incorporates by reference here each of the allegations set forth in this Complaint as though set forth fully herein.

124.    Defendants, from the time they first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed Axiron, and up to the present, willfully deceived Plaintiff by concealing from them, Plaintiff's physicians and the general public, the true facts concerning Axiron, which the Defendants had a duty to disclose.

125.    At all times herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of Axiron and willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the benefits, health risks, and consequences of using Axiron. Defendants knew that Axiron is not safe, fit, or effective for human consumption, that using Axiron is hazardous to health, and that Axiron has a serious propensity to cause serious injuries to its users, including but not limited to the injuries Plaintiff suffered.

126.    Specifically, Defendants knew that Axiron significantly increases the risk of thromboembolism, heart attack, stroke, and death, and that Axiron is not safe and effective for treating men with symptoms such as fatigue, low energy, low libido, and other symptoms that are normal symptoms of aging in men.

127.    Defendants concealed and suppressed the true facts concerning Axiron with the intent to defraud Plaintiff, in that Defendants knew that Plaintiff's physicians would not prescribe

Axiron, and Plaintiff would not have used Axiron, if they were aware of the true facts concerning its dangers.

128.    Defendants' fraudulent representations concerning the purpose for which Axiron should be used and the safety of Axiron were material representations.

129.    Defendants knew their representations concerning both the purpose for which Axiron should be used and the safety of Axiron were false.

130.    Nevertheless, Defendants made such representations to Plaintiff and his physicians with the intent to defraud Plaintiff and his physicians and with the intent of inducing their reliance upon such false representations.

131.    Plaintiff Todd Smith and his physicians justifiably relied on Defendants' material representations to Plaintiff's detriment.

132.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff Todd Smith suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

133.    Defendants' conduct as alleged in this Complaint shows that Defendants acted with malice, oppression, fraud, and a conscious disregard of the rights and safety of others, so as to warrant the imposition of punitive damages.

## NINTH CAUSE OF ACTION

### Negligent Misrepresentation

134.    Plaintiff incorporates by reference herein each of the allegations set forth in this Complaint as though fully set forth herein and further alleges as follows.

135.    Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Axiron, and, while engaged in the course of such business, made representations to Plaintiff

- 22 -

and his physicians regarding the character and/or quality of Axiron for guidance in their decision to select Axiron for Plaintiff's use.

136.    From the time Axiron was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations to Plaintiff, Plaintiff's physicians and the general public, including but not limited to the misrepresentation that Axiron was safe, fit and effective for human consumption.

137.    At all times mentioned, Defendants conducted a sales and marketing campaign to promote the sale of Axiron and willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of the abovementioned product.

138.    The Defendants made the foregoing representation without any reasonable ground for believing them to be true. These representations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject product.

139.    The representations by the Defendants were in fact false, in that Axiron is not safe, fit and effective for human consumption, using Axiron is hazardous to health, and Axiron has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff.

140.    Defendants' representations were made negligently and/or with the intention of inducing reliance and the prescription, purchase, and use of Axiron.

141.    In reliance on Defendants' misrepresentations, Plaintiff was induced to purchase and use Axiron. If Plaintiff had known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used Axiron. The reliance of Plaintiff upon Defendants'

misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

142. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff Todd Smith suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## **TENTH CAUSE OF ACTION**

### **Violation of California's Business and Professions Code § 17200, *et seq.***

143. Plaintiff incorporates by reference herein each of the allegations set forth in this Complaint as though fully set forth herein and further alleges as follows.

144. Plaintiff brings this cause of action pursuant to California Business & Professions Code §17204, in Plaintiff's individual capacity, and not on behalf of the general public.

145. California Business & Professions Code §17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

146. The acts and practices described above were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of California Business & Professions Code §17200. The acts of untrue and misleading advertising are, by definition, violations of California Business & Professions Code §17200. This conduct includes, but is not limited to:

  a. Representing to Plaintiff, Plaintiff's physicians, and the general public that Axiron was safe, fit, and effective for human use, knowing that said representations were false, and concealing from Plaintiff, Plaintiff's physicians, and the general public that Axiron had a serious propensity to cause injuries to users;

- 24 -

b. Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that Axiron was safe for human use, even though Defendants knew this to be false, and even though Defendants had no reasonable grounds to believe them to be true; and

c. Purposely downplaying and understating the health hazards and risks associated with Axiron.

147. These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California Business & Professions Code §17200, as well as unfair, deceptive, untrue and misleading advertising as prohibited by California Business & Professions Code §17500.

148. The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described therein.

149. As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of ill-gotten gains from the sale of Axiron in California, sold in large part as a result of the acts and omissions described herein.

150. As a result of Defendants' conduct described above, Plaintiff has in fact suffered physical and economic injuries as described herein.

151. Because of fraudulent misrepresentations made by Defendants as detailed above, and the inherently unfair practice of committing a fraud against the public by intentionally misrepresenting and concealing material information, the acts of Defendants described herein constitute unfair or fraudulent business practices.

152.    Plaintiff, pursuant to California Business & Professions Code §17203, seeks an order of this court compelling Defendants to provide restitution and injunctive relief calling for Defendants to cease unfair business practices in the future.

### **ELEVENTH CAUSE OF ACTION**

#### **Violation of Business and Professions Code § 17500, *et seq.***

153.    Plaintiff incorporates by reference herein each of the allegations set forth in this Complaint as though fully set forth herein and further alleges as follows.

154.    Plaintiff brings this cause of action pursuant to California Business & Professions Code §17500, in Plaintiff's individual capacity and not on behalf of the general public.

155.    California Business & Professions Code §17500 provides that it is unlawful for any person, firm, corporation, or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

156.    At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California Business & Professions Code §17500 by engaging in the following acts and practices with intent to induce members of the public, including healthcare professionals, to purchase and use Axiron:

    d.    Representing to Plaintiff, Plaintiff's physicians, and the general public that Axiron was safe, fit, and effective for human use, knowing that said representations were false, and concealing from Plaintiff, Plaintiff's physicians, and the general public that Axiron had a serious propensity to cause injuries to users;

    e.    Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that Axiron was safe for human use, even

though Defendants knew this to be false, and even though Defendants had no reasonable grounds to believe them to be true; and

    f.   Purposely downplaying and understating the health hazards and risks associated with Axiron.

157.    The foregoing practices constitute false and misleading advertising within the meaning of California Business & Professions Code §17500.

158.    The acts of untrue and misleading statements by Defendants described herein above present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

159.    As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of ill-gotten gains from the sale and prescription of Axiron in California, sold in large part as a result of the acts and omissions described herein.

160.    Pursuant to California Business & Professions Code §17535, Plaintiff seeks an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

161.    Plaintiff seeks restitution of the monies collected by Defendants and other injunctive relief to cease such false and misleading advertising in the future.

## TWELFTH CAUSE OF ACTION

### Violation of Civil Code § 1750, *et seq.*

162.    Plaintiff incorporates by reference herein each of the allegations set forth in this Complaint as though fully set forth herein and further alleges as follows.

163. Plaintiff alleges that Defendants, by the acts and misconduct alleged herein, violated the Consumer Legal Remedies Act, California Civil Code §§ 1750 et seq. (the "CLRA").

164. Plaintiff hereby seeks injunctive relief as appropriate against Defendants for their violations of the CLRA. The CLRA applies to Defendants' actions and conduct described herein because it extends to transactions which are intended to result, or which have resulted, in the sale of goods to consumers.

165. Plaintiff is a "consumer" within the meaning of California Civil Code § 1761(d).

166. Defendants have violated, and continue to violate, the CLRA in representing that goods have characteristics and benefits which they do not have in violation of California Civil Code §§ 1770(a)(5).

167. At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California Civil Code § 1770 by engaging in at least the following acts and practices with intent to induce members of the public, including healthcare providers, to purchase and use Axiron:

a. Representing to Plaintiff, Plaintiff's physicians, and the general public that Axiron was safe, fit, and effective for human use, knowing that said representations were false, and concealing from Plaintiff, Plaintiff's physicians, and the general public that Axiron had a serious propensity to cause injuries to users;

b. Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that Axiron was safe for human use, even though Defendants knew this to be false, and even though Defendants had no reasonable grounds to believe them to be true; and

c. Purposely downplaying and understating the health hazards and risks associated with Axiron.

168.    The foregoing practices constitute false and misleading advertising and representations within the meaning of California Civil Code § 1770. The acts of untrue and misleading statements by Defendants described herein present a continuing threat to members of the public and individual consumers in that the acts alleged herein are continuous and ongoing, and the public and individual consumers will continue to suffer harm as alleged herein.

169.    Unless Defendants are enjoined from continuing to engage in these violations of the CLRA, Plaintiff and members of the general public will continue to be harmed by the wrongful actions and conduct of Defendants.

170.    Pursuant to California Civil Code § 1780, Plaintiff seeks an order of this court for injunctive relief calling for Defendants to cease such deceptive business practices in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.    For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue applicable in this case;

2.    Awarding compensatory damages in excess of the jurisdictional minimum of this Court to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiff, medical expenses, health care costs, and medical monitoring, together with interest and costs as provided by law;

3.    Awarding Plaintiff punitive and/or exemplary damages in an amount sufficient to impress upon Defendants the seriousness of their conduct and to deter similar conduct in the future;

4.     Awarding all applicable statutory damages of the state whose laws govern this action;

5.     Awarding Plaintiff reasonable attorneys' fees;

6.     Awarding Plaintiff the costs of these proceedings; and

7.     For such further relief as this Court deems necessary, just, and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury as to all issues.

Respectfully submitted this 7th day of July, 2014.

Dated: July 7, 2014                                BURG SIMPSON ELDREDGE HERSH & JARDINE, PC

By: _____
JENNIFER L. KEEL
Counsel for Plaintiffs

*Of Counsel for Plaintiff*

Seth A. Katz
BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, Colorado 80112
Tel:  (303) 792-5595
Fax:  (303) 708-0527
skatz@burgsimpson.com

and

Calvin S. Tregre, Jr.
BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
Tel:  (513) 852-5600
Fax:  (513) 852-5611
ctregre@burgsimpson.com